COMMONWEALTH *vs.* NEW YORK, NEW HAVEN AND HARTFORD RAILROAD COMPANY.

SAME *vs.* SAME.

SAME *vs.* SAME.

It is no defence to an indictment under St. 1871, *c.* 83, § 1, against a railroad corporation for occupying a highway with its cars for more than five minutes, that the occupation was accidental and could not have been avoided, and was without intent to obstruct, and that reasonable diligence was used in removing the obstruction.

It is no defence to an indictment under St. 1871, *c.* 83, § 1, against a railroad corporation for occupying a highway with its cars for more than five minutes, that the greatest care was used by the corporation in the selection of its employees; that the employees were specially instructed not to permit such occupation; and that no officers of the corporation except such employees had knowledge of the occupation.

INDICTMENTS under St. 1871, *c.* 83, § 1, for occupying for more than five minutes at one time, with cars and engines, a part of Bridge Street in the city of Springfield, which is crossed by the defendant's tracks.

At the trial of the first case in the Superior Court, before *Wilkinson*, J., there was evidence offered by the government tending to show that, May 9, 1873, a train of cars was shoved down from the Connecticut River Railroad, by its engine and servants, on to the defendant's road, so as to cover the crossing at Bridge Street, which is about six hundred feet from the northern terminus of the defendant's road; that immediately after shoving the train this distance, the engine of the Connecticut River Railroad was detached and shoved back to the upper road. The train at this

time remained on the crossing twelve minutes.   This evidence was not controverted by the defendant.

The defendant then called one George P. Warriner, superintendent of a switch gang for the defendant, who testified that he superintended the men who took charge of the Bridge Street crossing, from 1 o'clock P. M. until 3 o'clock the next morning, or until the business of the road was done for that night ; that it was the custom of the Connecticut River Railroad to make up a train of mixed cars each afternoon, to be sent south ; that the train was delivered to the defendant by being shoved on to its road by the servants of the Connecticut road with their engines ; that ordinarily when the train was delivered to the defendant, it was stopped north of the Bridge Street crossing, though in some instances it had passed partly over the crossing ; that on May 9, 1873, the Connecticut River Railroad Company, about twenty minutes earlier than usual, and without giving the defendant notice, sent down an unusually long train, and sent it down with such force that it struck a train of cars upon the defendant's road, and shoved it over the crossing, so that the train of the Connecticut Railroad rested upon the crossing.   There was also evidence that it was the usual course of business for the defendant to receive and take charge of the freight trains of the Connecticut Railroad whenever they were left upon the defendant's tracks, whether the trains extended across Bridge Street or not, and that, in fact, upon this occasion, the agents of the defendant's road, immediately upon the train having been left where it was by the Connecticut River Railroad Company, took charge of it.   Below the crossing, and on the same track, was standing another short train belonging to the defendant, and the three trains were brought together by the force with which the Connecticut River Railroad train was shoved down.

In order to move the cars with the defendant's engine, which was below the crossing, it was necessary to couple the three trains together.   Warriner testified that he coupled the trains, attached the engine, passed above the crossing, unshackled the train at the third car above the crossing, and gave the signal to start the train. In starting, a shackle near the engine broke.   A new shackle had

to be procured before the train could be moved from the crossing, and the time occupied between the time the first train came upor the crossing until the crossing was cleared for the passage of travellers on the highway, was twelve minutes ; but the defendant's railroad used due diligence in clearing the crossing.

It was admitted that the defendant was a railroad corporation, and that Bridge. Street was a highway within the statute.

The defendant asked the court to instruct the jury as follows :

1st. That if the obstruction was caused by an accident, which could not have been avoided by the defendant by the exercise of reasonable care, and it used reasonable diligence in removing the obstruction, then the defendant is not guilty of the charge set forth in the indictment.

2d. That if the Connecticut River Railroad Company moved its train, intended for the defendant's road, over the crossing at an unusual time, without notice, then the defendant was not bound to have made any special preparation to receive and take care of the train, and is not liable for the obstruction in the highway, if it used due diligence to remove it.

The defendant also offered the evidence of E. M. Reed, the superintendent of its road, that the pole-tenders who had charge of this crossing were men of special fitness for this duty ; that they were honest, capable and faithful, according to the best information he had been able to obtain, and that it was his special duty to look after the character and reputation of the employees of the road. The defendant also produced a copy of its instructions given to the men having charge of the crossing, which was as follows :

" Your duties on Bridge Street crossing will be as follows :

" 1st. To see that the gate-tenders give the public the privilege of an open crossing at all times, when it is not blocked by passing trains, or unsafe by reason of approaching trains.

" 2d. You will see that the crossing is not blocked on any account unnecessarily, longer than three (3) minutes at one time, and that all teams that have gathered during a blockade are allowed to pass before another blockade by trains switching across the crossing, either on one or more tracks.

" 3d. When there has been a continuous blockade of crossing for three (3) minutes, you will give the blockading warning and orders to open the crossing; and disobedience of such orders, by train men or engineers, or neglect to open the crossing before the five (5) minutes shall have expired, you will report immediately.

" 4th. You will note for future reference, if need be, and report, stating names of all parties at fault at any blockade that may occur of over five (5) minutes duration.

" A copy of these instructions have been given to your mates and men in charge of switch trains, with orders to give you every facility in executing them.   D. J. Johnson, Agent."

Upon this evidence, the defendant asked the court to instruct the jury as follows: That if the defendant gave its servants the instructions as proved, and exercised the highest care in the selection of faithful and intelligent employees to control the crossing, and to obey these instructions, and the obstructions were permitted as alleged in this indictment, of which the defendant had no notice otherwise than through these servants, then the defendant is not liable criminally, as charged in the indictment, for the faults of its said servants.

The court declined to give this instruction as prayed for, and, as to the liability of the defendant, instructed them, among other things not excepted to, as follows: If the defendant allowed the northern road to run its cars on the defendant's road, and then leave them for the defendant's use, obstructing Bridge Street, the defendant was liable if it suffered the cars so to obstruct the street for more than five minutes.

A verdict was rendered against the defendant, by consent, and the defendant excepted.

At the trial of the second case, before the same court and judge, there was evidence that a train of cars was placed upon the crossing to be moved. One shackle on the train had been broken, and the train was there fastened together by a shackle chain. The engine started suddenly and broke the chain, and several minutes passed before the train could be again fastened together so as to

be moved. In consequence of the delay so caused, the train was kept upon the crossing eight minutes.

The defendant offered to prove that the shackle chain which was used in this instance was one kept by the defendant to be used in the place of broken shackles ; that it was of proper strength, and answered all of the purposes of a shackle ; that the engine did not start with more of a jerk to the train than it frequently did without accident, and that in moving the train from the crossing the defendant used due diligence under the circumstances, but the court declined to receive the testimony.

The defendant then offered to prove the instructions given by the defendant to its servants who had charge of the crossing, and the character of these men as faithful and intelligent employees, as set out above in the first bill of exceptions, and claimed that upon this evidence it could not be found guilty of the charge in the indictment, if, owing to the misconduct of these men in violating the rules of the defendant, the crossing had been illegally occupied.

The court declined to admit the evidence, or to give the instruction prayed for. A verdict was rendered against the defendant, who excepted.

At the trial of the third case, before the same court and judge, the evidence tended to prove that on May 14, 1873, a train of cars stood upon the crossing at Bridge Street for twelve minutes, to the hindrance of travellers on the highway who were waiting to cross the track at that place.

The defendant offered to prove the instructions given by it to its servants who had charge of this crossing, and the character of these men as faithful and intelligent employees, set forth above in the first bill of exceptions, and claimed that upon this evidence it could not be found guilty, if the crossing had been illegally occupied owing to the misconduct of these men in violating the rules of the defendant.

The court rejected the evidence, and declined to give the instruction prayed for. The jury returned a verdict of guilty, and the defendant excepted.

*N. A. Leonard,* ( *G. Wells* with him,) for the defendant in each case. The offence charged consists in occupying the highway for more than five minutes at one time. It is of no consequence how the occupation commenced. The offence was in the length of time the occupation was continued beyond five minutes. The evidence shows and offers to show that the defendant used due diligence in the selection of capable and faithful servants ; employed proper and the usual machinery in removing trains of cars ; undertook their removal within the time prescribed by the statute ; and was prevented from doing so by accident. The jury should have been instructed that the defendant was not guilty of the offence alleged, if the obstruction was accidental, and could not have been avoided by reasonable care. The refusal of the court to allow the jury to consider this testimony, and apply it to the question of the guilt or innocence of the defendant, was in effect to rule that the offence with which it was charged was not to be determined by the intent of the defendant, expressed or implied, or whether the defendant acted voluntarily, or otherwise. This is contrary to all rules of ethics or law, in judging of moral and criminal conduct. " If a man does an act through mistake or accident, or by force, or by the compulsion of others, which would be otherwise criminal, in which his own will and mind do not instigate him to the act, or concur, it is a matter of defence." *Commonwealth* v. *Elwell,* 2 Met. 190, 192. The circumstances surrounding this alleged offence distinguish it from that class of cases where a person has been held guilty of an act as criminal, without criminal intention, because he acted voluntarily, and took upon himself the risk of the character of his act, as in the cases of *Commonwealth* v. *Farren,* 9 Allen, 489 ; *Commonwealth* v. *Mash,* 7 Met. 472. In the cases at bar, the offence charged was in failing, from accident, to do something commanded to be done, that is, to remove an obstruction on the highway prohibited by law.

The defendant is not criminally liable for the misconduct of its servants, in allowing the highway to be occupied without the knowledge of the corporation, and in violation of its express orders, if the defendant exercised proper care in the selection of

its servants. *Commonwealth* v. *Nichols*, 10 Met. 259, and cases there cited. *Barnes* v. *State*, 19 Conn. 398.

*C. R. Train*, Attorney General, for the Commonwealth.

COLT, J. It is declared by St. 1871, *c.* 83, that "no railroad corporation shall unnecessarily or unreasonably use or occupy a highway; nor in any case with cars or engines for more than five minutes at one time," and a penalty is provided for each violation of the act. See also St. 1871, *c.* 316.

The defendant is indicted under the last clause of this statute, and asks the court to rule that there can be no conviction, if it is shown that the obstruction complained of was accidental, and could not have been avoided or removed by the exercise of reasonable care. The court is also asked to rule in substance that if the defendant employed suitable agents, and gave them proper instructions to prevent the alleged illegal occupation of the highway, it would not be liable criminally for the faults of such agents and servants, without notice of the obstruction, otherwise than through these servants. These instructions to the jury were properly refused by the court below. The obstruction complained of is made a nuisance by the statute, and is punished as such. The prohibition is absolute ; it applies expressly to all cases where the occupation or use of a highway exceeds five minutes at any one time, whether that occupation be reasonable or unreasonable, necessary or unnecessary. Knowledge or guilty intent is not an essential element in the commission of the offence, and need not be proved. And although corporations cannot be indicted for offences which derive their criminality from evil intention, they are not exempt criminally in cases of this description from the consequences of the unlawful acts or omissions of their agents and servants within the scope of their employment. The acts for which the defendant is indicted were committed or permitted by its servants in the regular course of their employment, and without a wilful departure from it on their part. It is immaterial that the corporation, or rather the superior officers of the corporation, had no knowledge of these acts, and had exercised great care and diligence to prevent them. The defendant is liable notwithstanding. *Commonwealth* v. *Emmons*, 98 Mass. 6. *Com-*

*monwealth* v. *Farren,* 9 Allen, 489. *Commonwealth* v. *New Bedford Bridge,* 2 Gray, 339, 345. 1 Bennett & Heard Lead. Crim. Cas. (2d ed.) 151. 3 Greenl. Ev. § 9 *a.*

*Exceptions overruled.*