ASENATH SMART *vs.* JOHN WHITE.

Penobscot. Opinion April 15, 1882.

*Excessive fee for obtaining a pension.   Excess recovered back.*
*U. S. R. S., § 5485.   Practice.*

The United States statutes provide severe penalties against any person taking or contracting to take from a pensioner more than the statutory price allowed for obtaining a pension. And taking an excessive sum is *per se* an unlawful and punishable act; although the taker intended no wrong or injury; and practiced no deceit or duress; the intention is not an element of the offense.

To constitute a merely statutory offense, of which a morally wrong intent is not a necessary ingredient, guilty knowledge or intent need not be alleged or proved, where the statute, as in this case, evidently dispenses with the necessity in order to make its provisions sufficiently effective.

Money taken from a pensioner exceeding the statutory allowance for services in obtaining a pension, may be recovered of the taker by the pensioner, although obtained from him without any wrongful intention, and whether the pensioner when paying or allowing the sum, knew of the statutory protection or not. The parties do not stand *in pari delicto.*

If the offense is merely statutory and not in itself immoral, a person may recover back money paid under an illegal contract, to the party who is wholly or principally the wrong doer, in cases where the object of the statute creating the illegality, is to protect one class of men against another, or where the illegal contract has been extorted from one party by the oppression of the other.

In such a case, the defendant is not screened from liability because he was an agent merely, and had paid the money to his principal before suit brought or demand made upon him. He is a principal in perpetrating the wrong.

It is too late, after verdict, to complain that a presiding judge, mis-stated testimony to the jury. The judge's attention should be called to the matter before the jury retires, so that he can correct himself, if he has fallen into error.

ON EXCEPTIONS and motion to set aside the verdict.

Assumpsit for money had and received from the pension money of the plaintiff.

The opinion states the case and the material facts.

*P. G. White,* for the plaintiff, cited : 7 Green. 134 ; 10 Allen, 76 ; 11 Cush. 57 ; 11 Mass. 376 ; 61 Maine, 376 ; 4 Mass. 491 ; *Taylor* v. *Jaques,* 106 Mass. 291 ; U. S. R. S., § § 4445, 5484, 5485, 4785 ; 2 Pars. Contr. 254, (4th ed.) ; *Concord* v. *Delaney,* 58 Maine, 316 ; *Worcester* v. *Eaton,* 11 Mass. 376 ; *Bliss* v. *Thompson,* 4 Mass. 491 ; *White* v. *Franklin Bank,* 22 Pick. 181 ; *Jones* v. *Barkley,* 2 Dougl. 684 ; Dicey on Parties, 277 ; *Elliott* v. *Swartwout,* 10 Peters, 158 ; *Ripley* v. *Geltson,* 9 Jola. 201 ; *Frye* v. *Lockwood,* 4 Cowan, 456 ; *Snowdon* v. *Davis,* 1 Taunt. 357 ; *Hearsey* v. *Pruyn,* 7 John. 182 ; *Fowler* v. *Shearer,* 7 Mass. 14 ; *Call* v. *Houdlette,* 70 Maine, 313 ; *Townsend* v. *Wilson,* 1 Camp. 396 ; Story, Agency, § 300 ; Wharton, Agency, § 520.

*Barker, Vose and Barker,* for the defendant.

The contract made by the defendant in behalf of the town of Levant, with the plaintiff, was that he would aid her in obtaining her pension, if she would pay over to the town the amount which she might receive as arrears of pension, on account of what she was indebted to the town. This she did less fifty dollars, and the amount the town thus received was less than half what the town expended on account of the plaintiff. This was not a payment of an excessive amount, or any amount, to Mr. White, as fees for obtaining a pension. He was not paid anything for his services, not even the ten dollars allowed by statute. He was not to be paid anything for his services by the plaintiff. She was not to pay anybody anything for White's services, and she did not. She simply agreed to pay something towards her indebtedness to the town, and that is all she did.

This agreement didn't profess to be a mortgage, pledge, assignment or transfer of her pension. It was an agreement not prohibited by statute or good morals, and having carried out the agreement in part, she cannot now repudiate. Bigelow on Estoppel, 51, 515.

As a matter of fact, the original agreement was repudiated by the plaintiff, and what money she paid over to Mr. White for the town, she did voluntarily after the receipt of her pension, when she had a right to appropriate it as she pleased, and did appropriate a little over a hundred dollars (all but fifty dollars) in part payment of a debt she owed the town.

Counsel contended that this could not be called payment under duress, citing: Cooley on Torts, 506; *Fellows* v. *Fayette*, 39 Maine, 561; *Harmon* v. *Harmon*, 61 Maine, 229; 1 Pars. Contr. 321; *Seymour* v. *Prescott*, 69 Maine, 376.

On the question of new trial, counsel cited: Hilliard, New Trials, (2d ed.) 459; *Hunnewell* v. *Hobart*, 40 Maine, 28; *Pollard* v. *G. T. Ry. Co.* 62 Maine, 93.

The presiding justice instructed the jury: "I now come to the time when the check was received. The pensioner had the check, it was her property. She indorsed it to the defendant White. What does White say? He swore in clear and explicit terms that he claimed the money by virtue of and under the bar-

gain of April, 1879, under that contract, that he got the check by virtue of that contract. If he got that check and the money on the check by virtue of that contract as he swears he did, he had no business with it, and the plaintiff has the right to recover."

This was an error in fact and in law. *Morris* v. *Platt*, 32 Conn. 75; *Hill* v. *Canfield*, 56 Penn. St. 454; *Care* v. *Williams*, 2 Cald. 239; *Chappell* v. *Allen*, 38 Mis. 213; *Elliott* v. *Swartwout*, 10 Peters, 137; *Mowatt* v. *McClelan*, 1 Wend. 176.

PETERS, J.   Section 5485, U. S. R. S., provides thus: "Any agent or attorney, or any other person instrumental in prosecuting any claim for pension or bounty land, who shall directly or indirectly contract for, demand, or receive or retain any greater compensation for his services or instrumentality in prosecuting a claim for pension or bounty land, than is provided in the title pertaining to pensions, or who shall wrongfully withhold from a pensioner or claimant the whole or any part of the pension or claim allowed and due such pensioner or claimant, or the land warrant issued to any such claimant, shall be guilty of a high misdemeanor, and, upon conviction thereof, shall for every such offense be fined not exceeding five hundred dollars, or imprisonment at hard labor, not exceeding two years, or both, at the discretion of the court." Another provision of the federal statutes prohibits any sale, pledge or assignment of any claim, right or interest in any pension which has been or may be granted, pronouncing all such transfers void.

The plaintiff, who was entitled to a pension, had been supported by the town of Levant as a pauper. The defendant, an overseer of the poor of the town, assisted her to obtain her pension, under a verbal agreement with her, he said, that whatever back pay might be received should be applied towards her indebtedness to the town for her support. The verdict finds the fact, that the defendant got the back pay from her, under and by force of the contract, excepting that he allowed her to retain fifty dollars of the amount, to induce her to carry the contract (with that variation) into effect.

The presiding judge, in his charge, had ruled, substantially, that the plaintiff had a legal right to dispose of the pension check

or its proceeds as she saw fit; that she could voluntarily pay with it her indebtedness to the town; that, although the agreement was not binding upon her, still, if she concluded to carry out the agreement, and without fraud or duress paid the money to the town, the payment would be binding upon her; but that, if the defendant obtained the money from her by means of the contract, without her knowing that she was not compelled to pay it over, then the payment would not be binding upon her, and the money could be recovered back. Thereupon, the defendant requested the court to give the following ruling to the jury: "If the jury find that this money was paid voluntarily by Mrs. Smart to John White, as one of the overseers of the poor for the town of Levant, without fraud or duress, *even though paid by mistake*, and he had paid it over to the town of Levant before receiving notice from her that she claimed to recover it back, then he is not personally responsible to the plaintiff." This request was properly refused.

The defendant's counsel must have intended, by the phrase, "paid by mistake," a mistake of law, meaning to assert the proposition that the money could not be recovered back, if she paid it in fulfillment of the contract by a mistake of law upon her part; that is, an ignorance upon her part that such a contract was illegal and void.

It cannot be pretended that the defendant should be shielded by any plea of an ignorance of the statute upon his part. It matters not, that he intended no wrong or injury and practiced no duress, and knew not of the statute. The statute does not make the actual intention of its violator an element of the offense. It does not prescribe the penalty against a person who shall *fraudulently* contract for and receive for services a greater share of a pension than the law allows. Taking the excessive sum is *per se* an unlawful and punishable act. It is well settled, upon the great weight of authority, that, in merely statutory offenses, of which a morally wrong intent is not a necessary ingredient, guilty knowledge or intent is not necessary to be either alleged or proved, where the statute creating the offense evidently dispenses with such necessity. The statute in question is founded

upon a policy of the federal government to protect a class of persons who might be incompetent fully to protect themselves, and it must necessarily be very absolute and rigorous in order to be effective. *State* v. *Smith*, 65 Maine, 257 ; *State* v. *Goodenow, Id.* 30 ; *Com.* v. *Railroad*, 112 Mass. 412, and cases cited. See 12 Amer. Law Rev. 469, where the question before stated is elaborately discussed and the authorities collected.

But the plaintiff stands in a different attitude. If her pension money was taken from her through a contract declared to be void by the statute, she can have its restoration. She would be entitled to recover it back, even had she known the law, and *a fortiori* entitled, not knowing it. The parties do not stand *in pari delicto*. The penalty of the statute is levelled at him and not at her. The punishment is to be inflicted upon the taker and not upon the giver. She is to be protected, not punished. Her ignorance of the law, or her folly, if not ignorant of it, is excusable, but his is not. He commits a wrong ; she does not. She cannot defraud herself. The statute would be nullified by a different interpretation.

The principle, that, where the offense is merely *malum prohibitum*, and not in itself immoral, a person may recover back money paid under an illegal contract to the party who is wholly or principally the wrong doer, runs through a long line of decisions which bear more or less analogy to the present case. The case at bar is a stronger case for the application of the principle than most of them. In Smith's Con. 204, it is said there is an exception to the rule or maxim, *in pari delicto, potior est conditio defendentis*, "where the illegality is created by some statute, the object of which is to protect one class of men against another, or where the illegal contract has been extorted from one party by the oppression of the other." And it is there further said : "In cases of this sort, although the contract is illegal, and although a person belonging to the class *against* whom it is intended to protect others, cannot recover money he has paid in pursuance of it, yet a person belonging to the class to be protected may, since the allowing him to do so renders the act more efficacious." The English cases quoted by the author to illustrate

the principle, are many and various. In *Smith* v. *Cuff*, 6 M. and Selw. 160, Lord ELLENBOROUGH says : "This is not a case of *par delictum*, but of oppression on one side, and submission on the other ; it can never be predicated as *par delictum*, when one holds the rod, and the other bows to it ; there was an inequality of situation between the parties."

In *Curtis* v. *Leavitt*, 15 N. Y. 9, it was held that, " where a contract otherwise unobjectionable, is prohibited by a statute, which imposes a penalty upon one of the parties only, the other party is not *in pari delicto*, and upon disaffirming the contract, may recover, as upon an implied assumpsit, against the party upon whom the penalty is imposed, for any money or property which has been advanced upon such contract." Other New York cases are to the same effect. *Schermerhorn* v. *Talman*, 4 Kernan, 93, and *Tracy* v. *Talmage, Idem*, 162, are to the same point, and contain copious citations of analogous cases. Benj. on Sales, (3rd Amer. ed.) § 509, note c. ; and cases cited.

In *White* v. *Franklin Bank*, 22 Pick. 181, where a plaintiff had deposited money in a bank, repayable at a future day, in violation of a statute of Massachusetts, he was allowed to recover back the deposit, upon the ground that, although both parties were culpable, the defendants were the *principal* offenders. The court there said that, to deny the action, would be to secure to the defendants the fruits of an illegal transaction, and would operate as a temptation to all banks to take an advantage of the unwary and those who had no knowledge of the law or the illegality of such transaction. In *Lowell* v. *Boston and Lowell R. R. Co.* 23 Pick. 24, the same doctrine is restated and reaffirmed, as applicable to another class of facts. In *Atlas Bank* v. *Nahant Bank*, 3 Metc. 581, 585, the same court, speaking of the decision in *White* v. *Franklin Bank*, says : "To have decided otherwise would have given effect to an illegal contract, in favor of the principal offender, and would have operated as a reward for an offense which the statute was intended to prevent." In *Walan* v. *Kerby*, 99 Mass. 1, in construing an act relating to the sale of intoxicating liquors, the court say : "The seller and buyer of intoxicating liquors sold in violation of law are not *in*

*pari delicto,* because the latter is guilty of no offense. When the purchaser seeks to recover back the price he has paid, the illegality of the transaction, of which he offers evidence, is wholly on the part of the defendant, and he himself is not *particeps criminis.*"

Other illustrations of the principle are found in many other cases. The doctrine is commented upon in *Concord* v. *Delaney,* 58 Maine, 316 ; is considered in Connecticut in the case of *Cameron* v. *Peck,* 37 Conn. 555 ; and elaborately discussed in New Hampshire, in the cases of *Prescott* v. *Norris,* 32 N. H. 101, and *Butler* v. *Northumberland,* 50 N. H. 33, 39.

If, then, there was such a contract between the plaintiff and the defendant, as before stated, it was illegal and void, and the defendant is not allowed to deny that he knew it to be illegal and void. He would be the principal if not the sole offender in the transaction. If the plaintiff assented to the payment under and by force of the contract because she was mistaken as to her legal rights, and did not know of the protection vouchsafed to to her by the statute, she was defrauded. In this view the different terms of the requested instruction are repugnant to each other. They are tantamount to this rendering : "If paid without fraud or duress, excepting such as may arise from the illegality of the transaction, he knowing and she not knowing that the contract was in violation of law." But that would be a fraud. The requested instruction was, therefore, self-contradictory — a *felo de se.*

The defendant cannot be screened from liability because he paid the money to the town before notice to pay back. The money was illegally in his hands. The rule of *respondeat superior* does not apply. The defendant was the active and efficient party in perpetrating the wrong complained of. *Call* v. *Houdlette,* 70 Maine, 308, and cases.

It is contended that the judge misstated to the jury some of the testimony of the defendant. Were it so, the objection comes too late after verdict. The judge's attention should have been called to the matter before the jury retired, so that he could correct himself, if he had fallen into error. But the case most

amply shows the complaint to be unfounded. Judges must allude to, and more or less repeat the evidence, in summing up to the jury, and it is impossible in all cases to preserve the exact words of witnesses. In this case no improper departure was indulged in. The defendant's statements were not misrepresented. Neither upon the law nor upon the facts should the verdict be disturbed.

*Motion and exceptions overruled.*

APPLETON, C. J., BARROWS, VIRGIN, LIBBEY and SYMONDS, JJ., concurred.