BADGER COAL & COKE COMPANY, Respondent, vs. STER-
    LING MIDLAND COAL COMPANY, Appellant.

*February 7—March 6, 1923.*

*Sales: Regulation of price by government: Sale at unlawful price:
        Recovery of excess by purchaser.*

Where defendant, a wholesale seller of coal, during the time an .
    order issued by the President pursuant to the act of Congress
    of August 10, 1917 (the Lever Act), limiting the price of
    bituminous coal to $2.70 a ton at the mines, was in force,
    dated back orders taken by plaintiff to a time before the exec-
    utive order took effect and exacted from him for coal so
    sold and delivered $2.90 a ton at the mine, plaintiff could
    recover the amount so unlawfully exacted, he not being *in
    pari delicto* with defendant.

APPEAL from an order of the circuit court for Brown
county: HENRY GRAASS, Circuit Judge. *Affirmed.*

The appeal is from an order overruling a demurrer to
plaintiff's complaint.

For the appellant there was a brief by *William L. Tibbs*
and *George H. Daum,* attorneys, both of Milwaukee, and
*Martin, Martin & Martin* of Green Bay, of counsel, and
oral argument by *Mr. Tibbs.*

For the respondent there was a brief by *Cady, Strehlow
& Kaftan* of Green Bay, and oral argument by *Robert A.
Kaftan.*

OWEN, J.   The complaint alleges that during the years
1919 and 1920 the defendant was engaged in selling coal at
wholesale at its mines and that the plaintiff was engaged,
at Green Bay and elsewhere, in the business of purchasing
coal at wholesale and distributing the same to its customers;
that between the 1st day of November, 1919, until long after
the 25th day of March, 1920, an order issued by the Presi-
dent· of the United States pursuant to the act of Congress

of August 10, 1917 (the Lever Act), limiting the price which the defendant or any one engaged in like business might charge for bituminous coal at the mines to the sum of $2.70 a ton, was in force; that in the month of January, 1920, and while said order was in force and effect, the plaintiff purchased from the defendant large quantities of bituminous coal at the mines; that the defendant, for the purpose of violating said act 'of Congress and the order of the President and for the purpose of receiving for said coal a greater price than authorized by law and by said order of the President, dated the orders for said coal as of October 28, 1919, two days before said order took effect, and exacted and extorted from the plaintiff for the coal so sold and delivered to the plaintiff by the defendant the sum of $2.90 a ton at the mine. The plaintiff demands judgment for the amount so unlawfully exacted, amounting to twenty cents per ton. Defendant demurred to the complaint on the ground that it did not state facts sufficient to constitute a cause of action, and that is the question presented here upon defendant's appeal from the order overruling its demurrer.

Sec. 25 of the act of Congress of August 10, 1917 (known as the Lever Act), 40 U. S. Stats. at Large, 284, ch. 53, authorized the President of the United States to fix the price of coal and coke whenever and wherever sold, and that whoever should, with knowledge that the prices of such commodity had been so fixed, ask, demand, or receive a higher price, or who should, with knowledge that the regulations had been prescribed as therein provided, fail or refuse to conform to any of the same, should, upon conviction, be punished by fine of not more than $5,000 or by imprisonment for not more than two years, or both.

Was the contract by which the defendant accepted twenty cents per ton from the plaintiff over and above the price fixed by the order of the President, void, and, if so, was it

void as to both parties or was it void only as to the defendant? The status of a contract prohibited by statute is not always easy of determination, especially where the statute itself merely penalizes one of the parties for entering into the contract and is silent as to whether the contract shall be void. This is illustrated by a comprehensive review of authorities in *Laun v. Pacific Mut. L. Ins. Co.* 131 Wis. 555, 111 N. W. 660. However, we think that a well-established principle is applicable to and solves the question here. It is stated in 3 Addison, Contracts (3d Am. ed.) p. 520, as follows:

"The law also implies a promise to refund money received under an illegal contract, where the plaintiff does not stand *in pari delicto* with the defendant. Where contracts, for example, are prohibited by statute, for the purpose of preventing one set of men from taking advantage of the necessities of others, and money is paid upon such contracts by one of those whom the law intended to protect, the person who has so paid his money does not stand *in pari delicto* with the person who has received it, and may, after the forbidden transaction is completed, bring an action upon a promise implied by law from the person who has got the money, to refund it."

That principle has been applied in numerous cases, among which may be cited *Smart v. White,* 73 Me. 332; *Ladd v. Barton,* 64 N. H. 613, 6 Atl. 483; *Irwin v. Curie,* 171 N. Y. 409, 64 N. E. 161; *Michener v. Watts,* 176 Ind. 376, 96 N. E. 127; *Mason v. McLeod,* 57 Kan. 105, 45 Pac. 76, 41 L. R. A. 548. The Maine and New Hampshire cases above cited involved a federal statute limiting the fee which an agent or attorney might charge a claimant for obtaining a pension. In both cases it was held that one who had paid more than the statutory fee might maintain an action to recover the excess.

In *Irwin v. Curie, supra,* a statute of the state of New York provided that no attorney should promise to give any

person any valuable consideration as an inducement to placing, or in consideration of having placed, in his hands a demand of any kind for the purpose of bringing an action thereon. It was held that a customs broker who, with the assent of his customers, had placed their claims with the government in the hands of an attorney for collection under an agreement that the latter will divide with him the amount of any recovery, may maintain an action against the attorney for his share of the amount collected. The decision was rested upon the fact that, while the statute prohibited the attorney from making such an agreement, it did not prohibit the layman from making such contract, and that as the statute was directed at the attorney alone, the parties were not *in pari delicto*.

In *Michener v. Watts, supra,* a statute of Indiana made it unlawful for any person to barter any patent right in any county without first filing with the clerk of such county copies of the letters patent, etc., and provided that a vendor who sold such rights without complying with the requirements of such statute was guilty of a misdemeanor. It was held that a vendee who had purchased a patent right from a vendor who had failed to file with the clerk of the county copies of the letters patent could sue for and recover the purchase money paid. In the opinion the court says:

"The general rule that the law will not enforce contracts made in violation of statute, or allow the recovery of money or property delivered in pursuance thereof, does not apply to appellee, for he cannot be said to be *in pari delicto* with appellant. The duties prescribed by said sections of the statute are imposed upon the vendor of patent rights, and are for the protection of purchasers. The law was not violated by appellee."

*Mason v. McLeod,* 57 Kan. 105, 41 Pac. 76, involved a statute similar to the one involved in the Indiana case. There the court said:

"It is contended by plaintiffs in error that if the statute is bad all of the parties are *in pari delicto,* and all should

be left without remedy. It appears that the contract finally made was not in fact closed up and completed. The $500 note previously delivered to Mason for the Texas territory was never delivered to McLeod. He had deposited the note as collateral in a bank at Leroy, and it was not then under the control of himself or his wife. The return of this note, and its exchange for the $235 note, was a part of the consideration of the contract, and until these things were done it was not in fact executed. More than that, the general rule that courts will not enforce contracts prohibited by statute, or allow the recovery of money or property paid or delivered in pursuance of them, does not apply to Mc-Leod. He cannot be held to be *in pari delicto*. The duties prescribed by the statute are imposed upon the vendor of patent rights, and are provided for the protection of purchasers. The law was not violated by McLeod. It placed no burdens upon him, and, having committed no wrong, he is not precluded from asking and obtaining relief."

The opinions in the cases cited are fortified by a reference to abundant authority, and citations could be multiplied to the proposition that where statutes prohibiting contracts are intended to restrain one class for the protection of another, such contracts are not void as to those whom it is intended to protect by the statute. A contrary construction would work hardship and imposition rather than afford the protection designed, and would nullify the very purpose of the statute. The legislation here under consideration was intended to protect the consumers from the rapacity and greed of the producers of coal. If this action were brought by a consumer of whom a price in excess of that fixed by the order of the President had been exacted, and who was obliged to pay that price in order to obtain fuel, there can be no question of the right of the consumer under such circumstances to maintain an action to recover the excess.

The plaintiff here was a distributor of coal. It was a part of the economic and industrial machinery through which coal was transported from the producer to the consumer. It does not appear from the complaint whether the

plaintiff in any manner consented to the antedating of the orders prior to the time when the order of the President took effect, or whether there was any conspiracy between the plaintiff and the defendant to so antedate the orders, and of course it cannot be so assumed. Neither does it appear whether the plaintiff added the twenty cents per ton unlawfully exacted by the defendant to the price at which it resold the product, or whether its profits were diminished by that amount. We do not say now whether that fact would be material. It is not raised by the issues presented. Upon the face of the complaint it does appear that the defendant exacted an unlawful charge, thereby receiving from the plaintiff money to which it was not entitled, and the face of the complaint discloses no reason why plaintiff should not maintain this action to recover the same. It follows that the demurrer was properly overruled.

*By the Court.*—Order affirmed.