FRANK CARMINE, Respondent, *v.* TERRENCE MURPHY et al., Individually and as Copartners under the Firm Name of MURPHY AND McMORROW, Defendants, and TERRENCE MURPHY, Individually and as a Copartner in the Firm of MURPHY AND McMORROW, Appellant.

Argued April 7, 1941; decided May 29, 1941.

*Irving Rader* and *Sidney I. Sicker* for appellant.

*Harry M. Alfert* and *Anthony Valenti* for respondent.

LOUGHRAN, J. Plaintiff alleges that he sold and delivered certain alcoholic beverages to the defendants and demands judgment for an unpaid balance of the agreed price and reasonable value thereof. He concedes that no license to traffic in alcoholic beverages was ever issued to him by the State Liquor Authority pursuant to the provisions of the Alcoholic Beverage Control Law (Cons. Laws, ch. 3-B). Whether that fact nullifies his asserted cause of action is the question to be determined.

Section 100 of the Alcoholic Beverage Control Law makes this provision: " No person shall manufacture for sale or

sell at wholesale or retail any alcoholic beverage within the state without obtaining the appropriate license therefor required by this chapter." The statute prescribes six kinds of licenses to traffic in beer; five kinds of licenses to traffic in liquor; and four kinds of licenses to traffic in wines. Its provisions direct that no retail licensee (other than a club or hotel) shall sell any alcoholic beverage on credit and that no licensed wholesaler shall sell any such beverage for purposes of resale to any unlicensed person. (§ 100.) Additional "prohibitions and restrictions" relating to licensees are too extended for abridgement here. We think it can hardly be presumed that the Legislature intended that transactions so punctiliously forbidden were to be accompanied by no consequence other than the penal discipline imposed by section 130. (See *Miller* v. *Ammon,* 145 U. S. 421, 427.)

But we are not left to spell out the legislative purpose from the context and structure of the statute. (Cf. *Fosdick* v. *Investors Syndicate,* 266 N. Y. 130.) The above-mentioned restrictions and regulations are prefaced in section 2 by these telling words: " It is hereby declared as the policy of the state that it is necessary to regulate and control the manufacture, sale and distribution within the state of alcoholic beverages for the purpose of fostering and promoting temperance in their consumption and respect for and obedience to law. It is hereby declared that such policy will best be carried out by empowering the liquor authority of the state to determine whether public convenience and advantage will be promoted by the issuance of licenses to traffic in alcoholic beverages, the increase or decrease in the number thereof and the location of premises licensed thereby, subject only to the right of judicial review hereinafter provided for. It is the purpose of this chapter to carry out that policy in the public interest. The restrictions, regulations and provisions contained in this chapter are enacted by the legislature for the protection, health, welfare and safety of the people of the state. * * * "

In the face of this declaration, we cannot escape the conclusion that the present case is not to be excepted from the general rule of law that no right of action can spring out of an illegal contract. (See *Griffith* v. *Wells*, 3 Den. 226; *Hunt* v. *Knickerbacker*, 5 Johns. 327; *Pratt* v. *Short*, 79 N. Y. 437, 446; *American Store Equipment & Construction Corp.* v. *Dempsey's Punch Bowl, Inc.*, 283 N. Y. 601; 6 Williston on The Law of Contracts [Rev. ed.], § 1764. Cf. *Rosasco Creameries, Inc.*, v. *Cohen*, 276 N. Y. 274, and the cases there cited.)

The orders should be reversed and the motion to dismiss the complaint granted, with costs in all courts. The question certified should be answered in the negative.

FINCH, RIPPEY, LEWIS, CONWAY and DESMOND, JJ., concur; LEHMAN, Ch. J., taking no part.

Orders reversed, etc.