INTERNATIONAL SPANGLES CORPORATION, Respondent, *v.* MARROW MANUFACTURING CORPORATION, Appellant.

Argued April 3, 1945; decided May 24, 1945.

*Sydney A. Hellenbrand* and *Harold W. Hastings* for appellant. The contract of sale being in violation of the Emergency Price Control Act and Regulations, is unenforcible and plaintiff may not recover thereon. (*Carmine* v. *Murphy*, 285 N. Y. 413; *Segal* v. *Chemical Importing and Manufacturing Co.*, 205 App. Div. 220; *Matter of Kramer & Uchitelle, Inc.*, 288 N. Y. 467; *Sanders* v. *Lowenstein & Sons, Inc.*, 264 App. Div. 367; *Matter of Mendelson* [*Auburn Fabrics, Inc.*], 108 N. Y. L. J., p. 147, col. 4; *Export Syndicate of Steel Producers, Inc.*, v. *Dilsizan*, 107 N. Y. L. J., p. 2732, col. 1; *S. Reubens & Bros.*, v. *Samdperil*, 181 Misc. 713, 47 N. Y. S. 2d 407.)

*Karl E. Lachmann, Paul L. Ross, John D. Masterton, Thomas I. Emerson* and *Fleming James, Jr.*, for Chester Bowles, as Administrator of the Office of Price Administration, *amicus curiæ* in support of appellant's position. I. Plaintiff violated the regulation and the act. II. Plaintiff's violations of the act makes its sales contracts unenforcible. (*Carmine* v. *Murphy*, 285 N. Y. 413; *Miller* v. *Ammon*, 145 U. S. 421.) III. Plaintiff cannot recover until it meets its burden of proof showing that the price claimed was legal. (*Rossi* v. *United States*, 289 U. S. 89; *Morrison* v. *California*, 291 U. S. 82; *F. L. & T. Co.* v. *Siefke*. 144 N. Y. 354; *Murray* v. *Narwood*, 192 N. Y. 172; *Breuchaud* v. *Bank of New York & Trust Company*, 283 N. Y. S. 812; *Cohen* v. *Gurman*, 28 N. Y. S. 2d, 917; *In re Sitkin's Will*, 271 N. Y. S. 688; *Seufert* v. *Commercial Travelers' Mut. Acc. Ass'n. of America*, 266 N. Y. S. 6; *Battah* v. *Prudential Ins. Co. of America*, 267 N. Y. S. 683; *Genesee Valley National Bank and Trust Co. of Genesee* v. *Bolton*, 290 N. Y. S. 913; *Perine* v. *Elmira C. & W. Ry. Co.*, 172 N. Y. S. 396.)

*Henry Laufbahn* for respondent. I. Defendant had the burden of proving the illegality of the contract. (*Murray* v. *Narwood*,

192 N. Y. 172.) II. The contract is enforcible, because the Office of Price Administration Regulation does not expressly provide that its violation will deprive the parties of the right to sue on the contract, and the denial of relief would be wholly out of proportion with the requirements of public policy as embodied in the regulation. (*Rosasco Creameries Inc.*, v. *Cohen*, 276 N. Y. 274.)

LEWIS, J.   One of the measures adopted by the Congress to prevent disorganization of our national economy by wartime inflation was the enactment of the Emergency Price Control Act of 1942.   (56 U. S. Stat. 23, U. S. Code, tit. 50, Appendix, Supp. II, §§ 901 *et seq.*, as amd. by the Inflation Control Act, 56 U. S. Stat. 765, U. S. Code, tit. 50, Appendix, Supp. II, § 961 *et seq.*) That law — to which reference will be made as the Price Control Act — was enacted " in the interest of the national defense and security and necessary to the effective prosecution of the present war."   Its declared purposes were, among others, " to stabilize prices and to prevent speculative, unwarranted, and abnormal increases in prices and rents; to eliminate and prevent profiteering   *   *   *   and other disruptive practices resulting from abnormal market conditions or scarcities caused by or contributing to the national emergency; [and]   *   *   *   to prevent a post emergency collapse of values   *   *   * ."   Provision is made for the establishment of the Office of Price Administration under the direction of a Price Administrator whose duties include the promulgation of regulations governing administrative procedure and the fixing of such maximum prices and rents as will effectuate the purposes of the Act.   Standards are prescribed " to guide the administrative determination of both the occasions for the exercise of the price-fixing power, and the particular prices to be established."   (*Yakus* v. *United States*, 321 U. S. 414, 423.)

In the case at bar, which involves an action for goods sold and delivered, we are to consider the legal effect of a seller's nonconformance with the General Maximum Price Regulation — hereinafter referred to as the Regulation — issued by the Price Administrator on April 28, 1942.   (General Maximum Price Regulation, §§ 1499.2, 1499.3.)   That Regulation, based upon " findings " by the Price Administrator that commodity

prices had risen in a manner inconsistent with the purposes of the Act, provides that the " seller's maximum price " for any commodity shall be: (1) The highest price charged by the seller for the same commodity during the base period which is designated as March, 1942; or (2) If the seller made no sale of the same commodity during March, 1942, his highest offering price in that month for the same commodity; or (3) If the seller made no sale or offer of sale of the same commodity during March, 1942, then the highest price charged during that month for the same commodity by a " most closely competitive seller " of the same class; or (4) If the seller cannot determine the maximum price by any of the above methods, a price determined by the seller after specific authorization from the Office of Price Administration given in the form of an order prescribing a method of determining the maximum price and submitted to the Office of Price Administration within ten days in accordance with the Regulation. By sections 1499.11 and 1499.12 of the Regulation a seller is required to keep " base-period records " of prescribed types to enable the Office of Price Administration to check the legality of sale prices demanded by the seller and the method used by him in determining his maximum price.

In the case before us the plaintiff's pleading and proof went no further than to establish the sale and delivery to the defendant in October, 1942, of 230¼ pounds of a commodity described as perforated acetate strips at $3.50 per pound and that the defendant had refused to make payment therefor in response to the plaintiff's demand. The defendant's position was that the commodity price of $3.50 per pound demanded by the plaintiff violated the provisions of the Price Control Act and the Regulation promulgated thereunder. In support of that position the defendant by its answer pleaded as an affirmative defense, and by its evidence established, at least prima facie, that plaintiff had made no sale or offer of sale of perforated acetate strips during the month of March, 1942, at a price of $3.50 per pound or more; that no sale of such commodity had been made at competitive sale during March, 1942, at $3.50 per pound or more; and that plaintiff had not applied to the Office of Price Administration for a determination of a maximum price to be charged for such commodity and had not filed or kept the " base period records " as required by the Regulation.

The challenge comprised within the defendant's pleading and supported by evidence cast upon the plaintiff the burden of proving that the price demanded by the plaintiff for the commodity delivered was not in excess of the maximum price fixed in conformity with the requirements of the Price Control Act and the Regulation thereunder. The Regulation, section 1 (§ 1499.1) provides that, " regardless of any contract  *  *  *  no person shall sell or deliver any commodity  *  *  *  at a price higher than the maximum price permitted by this General Maximum Price Regulation." The Price Control Act, section 4, subdivision (a), declares it to be unlawful for any person to sell or deliver any commodity in violation of any regulation promulgated under the act. In the absence of proof by the plaintiff that it had established a maximum price for its acetate strips in accord with any one of the alternative methods defined in the Regulation, the plaintiff's demand in this action for the price of the commodity delivered to the defendant is legally unenforcible. (*Matter of Kramer & Uchitelle, Inc.*, 288 N. Y. 467, 470–472; *Sanders* v. *Lowenstein & Sons, Inc.*, 264 App. Div. 367, affd. 289 N. Y. 702; *Carmine* v. *Murphy*, 285 N. Y. 413, 415.)

The judgments should be reversed and the complaint dismissed, with costs in all courts.

LEHMAN, Ch. J., LOUGHRAN, CONWAY, DESMOND, THACHER and DYE, JJ., concur.

Judgments reversed, etc.