ARMOUR & CO. v. BLINDMAN et al.

Civil Action No. 2260.

District Court, D. Minnesota,
Fourth Division.

Aug. 28, 1947.

Grannis & Grannis, of South St. Paul, Minn., for plaintiff.

Benedict Deinard, of Leonard, Street & Deinard, and Benjamin Segal, all of Minneapolis, Minn., for defendants.

NORDBYE, District Judge.

The following necessary facts are stipulated for the purposes of these motions: (1) Between December 14, 1942, and September 17, 1945, defendants made overceiling sales to plaintiff of certain industrial wooden boxes of various sizes; (2) the prices of said industrial wooden boxes were, under the Emergency Price Control Act, 50 U.S.C.A.Appendix, § 901 et seq., to be determined by a formula, and plaintiff at the time of purchase had no reason to believe that the price it was paying was in excess of the ceiling established under the Act; (3) the defendants guaranteed that the prices which were charged were not in excess of the legal price ceiling; and (4) the boxes were not purchased by the plaintiff for use or consumption other than in the course of trade or business. Plaintiff seeks to recover the overceiling prices paid to defendants on account of the boxes sold by defendants to plaintiff between December 14, 1942, and September 17, 1945. It seeks judgment in the sum of $66,394.33, or "such other exact sum as will be determined to be due."

Plaintiff in its brief states the legal issue on defendants' motion for judgment as follows: Does Section 925(e) of the Emergency Price Control Act prohibit by implication a suit by plaintiff for the recovery of that part of the price charged which

was in excess of the price represented by defendants to be the correct legal and agreed price? The posing of that question must be considered in light of the stipulated facts herein. Or, stated in another way, the issue may be framed as follows: Does Section 925(e) of the Emergency Price Control Act constitute the exclusive remedy available to purchasers of overceiling commodities?

Section 904(a), Title 50 U.S.C.A.Appendix, provides that

"It shall be unlawful, regardless of any contract, agreement, lease, or other obligation heretofore or hereafter entered into, for any person to sell or deliver any commodity, or in the course of trade or business to buy or receive any commodity, * * * in violation of any regulation or order * * * or of any price schedule * * *."

■ This plaintiff, therefore, having purchased these boxes in the course of trade or business at a price above ceiling, violated the clear provisions of this law. In other words, under the law both the seller and the purchaser were in delicto. Section 925(e) of the enforcement statute provides:

"If any person selling a commodity violates a regulation, order, or price schedule prescribing a maximum price or maximum prices, the person who buys such commodity for use or consumption other than in the course of trade or business may * * * bring an action against the seller on account of the overcharge. * * *"

Under the same statute, the Administrator may bring an action if the buyer fails to do so within the time specified, or if the buyer "is not entitled for any reason to bring the action." A reading of these two sections—904(a) and 925(e)—impels the conclusion that a buyer in the course of trade or business who buys at overceiling prices commits an unlawful act, and that the only member of the buying public who is vested with a right to bring an action against a seller for an overcharge under the Act is one who buys for use or consumption other than in the course of trade or business; that is, "the ordinary non-commercial consumer * * *. In all

other cases, the right vests in the Administrator for the use and benefit of the nation as a whole." Boyles v. Glick Bros. Lumber Co., 9 Cir., 146 F.2d 566, 568.

■ A consideration of the legislative history of the Act, its purposes, and the public policy indicated therein, leaves no real doubt as to the soundness of defendants' position in asking for a dismissal of plaintiff's complaint. Both parties recognize and urge in support of their respective positions that the purpose of the Price Control Act was to stem the tide of inflation. It is apparent that Congress prepared a carefully worked out statute which sought to achieve this end. The support of the ordinary noncommercial consumers was enlisted by granting them the right to sue for treble damages, and they were not declared to be violators in the event they purchased at a price above ceiling. It is fair to assume that Congress acted under the belief that the noncommercial consumer would be caught between the upper and nether millstones with little chance but to pay the price demanded and with no opportunity to pass on to anyone else the overcharge. It cannot be seriously contended that, when Congress specifically termed a purchaser at overceiling prices in the course of trade or business a law violator, it did not do so advisedly. The legislative history unmistakably indicates that Congress in furtherance of the purposes of the Act deemed it advisable or necessary to class both the seller and the buyer as violators under these circumstances. Senate Report 931, p. 8 (77th Congress, 2d Session), states that Section 905(e) "will permit private purchasers who buy for personal use or consumption rather than in the course of trade or business, to protect themselves against violations of the Act." On p. 26 of the Senate Report, the following appears: "If a buyer, whose seller has violated a maximum price regulation or price schedule is not entitled to bring such action, because he is a buyer in the course of trade or business, or for other reasons, the Administrator may bring such action against the seller on behalf of the United States." Moreover, the Conference Report (No. 1658) states on p. 26 that "non-

commercial consumers might institute treble damage suits."

It may well be that Congress assumed that buyers in the course of trade or business would know, or should know as well as the seller, what the legal ceiling prices should be of the commodities in which they were dealing. Moreover, there would be the temptation on the part of such buyer to merely pay the price asked and pass along the overcharge to the ultimate consumer. To permit, therefore, such a purchaser to be clothed with the right to sue for single or treble damages might well invite an attempt on his part to obtain recoupment when no actual loss had been sustained. The noncommercial consumer, however, would have no one to whom he could pass along the overcharge. Consequently, it seems clear that Congress intended to impose upon the purchasers in the course of trade or business the responsibility of policing their own industry, and therefore made it obligatory on both seller and purchaser under such circumstances to know what the ceiling prices were in regard to the commodities with which they were dealing. True, there would be no criminal responsibility unless such a purchaser was a willful violator. But whether innocent or not, the purchaser at an overceiling price in the course of trade or business was deemed a violator. And that Congress intended that such violator should not be accorded the right to bring any suit, but lodged that exclusive right in the Administrator seems free from doubt. Bowles v. Chew, D.C., 53 F.Supp. 787, 791. The implication of the Act in this regard seems clear and impelling, for Sec. 925(e) specifically excepts those buying at overceiling prices for trade or resale from that group entitled to recover damages thereunder.

But it is urged that plaintiff has a right to bring an action for single damages on the broad principles of equity jurisprudence, and plaintiff strongly relies on the views expressed by the Supreme Court in Porter v. Warner Holding Co., 328 U.S. 395, 66 S.Ct. 1086, 90 L.Ed. 1332. But that decision will not avail plaintiff herein. There, the Supreme Court merely construed the general equity powers embraced in the Act which authorize the Administrator to enforce Sec. 925(a) for an injunction against law violators and which empowers the Court to grant the Administrator an injunction as well as restitution of overceiling rents if the Court deems it necessary or proper "to vindicate the public interest." 328 U.S. at page 402, 66 S.Ct. at page 1091, 90 L.Ed. 1332. Plaintiff further relies on the principle of law which is sometimes enunciated that when a statute commands or prohibits a thing to be done, a person belonging to the class for whose benefit the statute has been passed may have a cause of action against the violator of the statute for the ensuing damage. But, in the instant situation, it cannot be said that the Price Control Act was adopted for the benefit of a class of which plaintiff was a member. On the contrary, by the specific terms of the Act, plaintiff by purchasing at overceiling prices in the course of trade or business, became in delicto, if not in pari delicto, with the defendants. The contract between the parties being illegal, it is clear that Congress intended that no rights should be predicated thereon. Plaintiff's suit, under the law, is to be differentiated from the so-called Blue Sky cases (Webster v. U.S.I. Realty Co., 170 Minn. 360, 212 N.W. 806), or suits under the Lever Act, 40 Stat. 276. Badger Coal & Coke Co. v. Sterling Midland Coal Co., 180 Wis. 79, 192 N.W. 461; Detroit Edison Co. v. Wyatt Coal Co., 4 Cir., 293 F. 489. There, the purchasers were deemed to be innocent and not in delicto with the sellers.

The clear intent of Congress to vest the Administrator with the exclusive right to institute suit where an overceiling sale is made to one in the course of trade or business, cannot be circumvented by any legal legerdemain in styling the action as one in equity to force one unjustly enriched to disgorge, or on the theory of breach of warranty or fraud. The right of action, regardless of the allegations contained in the complaint, is a creature of statute. It was unknown at common law and it is to the statute that we must look in order to determine what rights plaintiff has thereunder. Everybody recognizes, and the courts have been uniform in holding, that the Administrator has the right to institute

an action against the defendants for the violation referred to in the complaint. In fact, the stipulation indicates that the Administrator was awarded a judgment of $23,404.68 on account of overceiling sales made by the defendants to the plaintiff of industrial wooden boxes, when plaintiff purchased the boxes in the course of trade or business, and that such judgment covered overceiling sales up to December 15, 1944. If plaintiff's position is sound, the defendants would not only be subject to a treble damage action by the Administrator, but to a single action by the plaintiff as well. To countenance, therefore, the action which plaintiff now seeks to sustain would do violence to the carefully planned legislation which Congress enacted for the purpose of defeating inflation.

The views indicated herein find support in Alba Trading Co., Inc., v. Constants, 181 Misc. 778, 47 N.Y.S.2d 138; Marrow Manufacturing Corp. v. Walco Bead Co., Inc., 296 N.Y. 764, 70 N.E.2d 558; Pittsburgh Fabric Products Co. v. Geller, Sup., 65 N.Y.S.2d 461; Marrow Mfg. Corp. v. Eitinger, 185 Misc. 900, 58 N.Y.S.2d 11, affirmed 296 N.Y. 760, 70 N.E.2d 557; Edsil Trading Corp. v. John Minder and Sons, 188 Misc. 1029, 70 N.Y.S.2d 229; Foley v. Day Bros., 320 Mass. 344, 69 N.E.2d 451; Grindle v. Brown, 321 Mass. 182, 72 N.E.2d 431; contra, Compania v. Caldwell & Co., 185 Misc. 902, 58 N.Y.S.2d 745.

The holding of the majority of the New York cases is criticised by plaintiff's counsel because of the claimed inconsistency in that the Appellate decisions of that State hold that, when a seller charges overceiling prices and seeks to recover the purchase price, the buyer is absolved from all liability by reason of the seller's violation. International Spangles Corp. v. Marrow Mfg. Corp., 294 N.Y. 295, 62 N.E.2d 77; Toll v. Freidman, Sup., 65 N.Y.S.2d 555. But there is not necessarily any inconsistency between the principle that no recovery can be had by the purchaser for overceiling prices paid in the course of trade or business and a denial of recovery to the seller who seeks to recover from such purchaser a contract price which is overceiling. Recovery on the latter state of facts would be tantamount to an approval of the illegal contract and would aid the enforcement of a contract which is declared by law to be illegal. Under those circumstances, as well as in the instant case and in the New York cases criticised by plaintiff's counsel, denial of recovery prevents such aid and encourages the accomplishment of the purposes for which the Emergency Price Control Act was enacted.

Defendants' motion under Rule 56 for judgment in their favor on the pleadings and on the stipulated facts herein should be, and is, granted. It is so ordered. Plaintiff's motion to strike certain paragraphs of defendants' answer, as set forth in plaintiff's motion, is in all things denied.

An exception is allowed to the plaintiff.