EDSIL TRADING CORP., Appellant, *v.* JOHN MINDER & SONS, INC., Respondent.

ISAAC FAIGHES, Plaintiff, *v.* EDSIL TRADING CORP., Appellant, and JOHN MINDER & SONS, INC., Impleaded Defendant-Respondent.

Argued January 6, 1948; decided April 22, 1948.

314

*Isador Goetz, William Auerbach, Andrew Klein* and *Rubin Cohen* for appellant. I. Appellant is seeking relief pursuant to the terms of an express contract. The agreement though oral was clear, definite and enforcible. II. The agreement was legal and designed to comply with the Emergency Price Control Act. (*Meyer* v. *Price,* 250 N. Y. 370; *People ex rel. N. Y. C. R. R. Co.* v. *Walsh,* 211 N. Y. 90; *German* v. *Snedeker,* 257 App. Div. 596; *Chance* v. *Guaranty Trust Co. of N. Y.,* 260 App. Div.

216; *Miorin* v. *Miorin*, 257 App. Div. 556; *United States* v. *Bruno*, 329 U. S. 207; *Tuskegee Homes Co.* v. *Oswald*, 248 Ala. 64; *Cedar* v. *McCarthy*, 70 N. E. 2d 698.) III. Appellant is entitled to recover for money paid under mistake. (*Municipal Metallic Bed Mfg. Corp.* v. *Dobbs*, 253 N. Y. 313.) IV. Appellant is entitled to recover for money had and received. (*Curry* v. *Mackenzie*, 239 N. Y. 267; *Tuskegee Homes Co.* v. *Oswald*, 248 Ala. 64; *Porter* v. *Warner Holding Co.*, 327 U. S. 773.)

*Philip H. Weeks* for respondent. I. The sales were illegal and will not support a cause of action based thereon. (*Enterprise Frame & Novelty Corp.*, v. *Schieman*, 183 Misc. 3; *Marrow Mfg. Corp.* v. *Eitinger*, 185 Misc. 900, 270 App. Div. 830, 296 N. Y. 760; *Marrow Mfg. Corp.* v. *Walco Bead Co.*, 270 App. Div. 889, 296 N. Y. 764; *Marrow Mfg. Corp.* v. *Eitinger Bead Co.*, 270 App. Div. 830, 296 N. Y. 762; *International Spangles Corp.* v. *Marrow Mfg. Corp.*, 294 N. Y. 295.) II. All causes of action pleaded are based entirely and indivisibly upon alleged illegal sales and must stand or fall together. The prices and the alleged warranties are part and parcel of the sales. Without the sales, there could be no breach of warranty. With the sales, illegal as they are, there can be no actionable breach of warranty and, therefore, no recovery. A cause of action for breach of warranty as to the quality of goods sold rests inextricably on the sale itself. (*Carmine* v. *Murphy*, 285 N. Y. 413; *Adler* v. *Zimmerman*, 233 N. Y. 431; *Tench* v. *Lawson*, 225 App. Div. 198; *DiTomasso* v. *Loverro*, 250 App. Div. 206; *O'Connor* v. *O'Connor*, 263 App. Div. 820, 288 N. Y. 579.) III. Appellant cannot recover on any theory. (*Municipal Metallic Bed Mfg. Corp.* v. *Dobbs*, 253 N. Y. 313.)

LEWIS, J. This appeal involves two actions which, as they come to us, have been consolidated. Both actions arise from the same series of transactions — the sale of meat by the defendant, John Minder & Sons, Inc. (hereinafter referred to as Minder), to the plaintiff Edsil Trading Corp. (hereinafter referred to as Edsil) between October 6, 1942, and January 27, 1944.

In the first action, Edsil as plaintiff seeks to recover from the defendant Minder amounts paid by it to Minder in excess of the prevailing ceiling prices established by the Office of Price Administration (hereinafter referred to as OPA) — acting under

the Emergency Price Control Act of 1942 (U. S. Code, tit. 50 Appendix, §§ 901–946, as amd.). For a second cause of action in the first action Edsil seeks damages for alleged misrepresentation and breach of warranty as to the fitness of the meat purchased by it from Minder for resale, and for resulting loss of good will suffered by plaintiff when it delivered unmerchantable products to its customers.

In the second action, one Faighes sues Edsil for breach of warranty arising out of the purchase of meat and meat products from Edsil. In that action Edsil served a cross complaint upon Minder alleging that the meat products sold to Faighes and for which Faighes claims damages had been·bought by Edsil from Minder.

Special Term granted defendant's motion for summary judgment dismissing Edsil's complaint in the first action and the cross complaint in the second action and ordered judgment in favor of Minder. At the Appellate Division the judgment appealed from was unanimously affirmed. We permitted Edsil to appeal from the judgment entered upon the order of the Appellate Division.

The complaint in the first action alleges the following facts: During the period from October, 1942, to January, 1944, the defendant Minder, a meat packer, sold certain meat and meat products to the plaintiff Edsil, a meat exporter. According to an oral contract entered into in November, 1942, Edsil and Minder agreed that the prices to be charged by Minder and paid by Edsil were not to exceed the prices established by OPA. According to the complaint " It was further agreed that at the said time, the said ceiling prices were not known to the plaintiff, and as defendant claimed they were not known to the defendant, that defendant should invoice to plaintiff, upon the invoices accompanying such sales and deliveries, at prices approximating what defendant believed would be such ceiling prices, and plaintiff would *temporarily* pay such invoice prices, but that in the event it should be ascertained that the prices, as charged by the defendant to the plaintiff upon said invoices from time to time, shall be in excess of the ceiling price or prices fixed and established by the Office of Price Administration, *then and in that event the defendant was to refund and repay to the*

*plaintiff any amount invoiced by defendant and paid by the plaintiff in excess of such ceiling prices."* (Emphasis supplied.)

Pursuant to that agreement Minder invoiced Edsil on each sale at a price considered by it to be the approximate ceiling price and Edsil paid Minder all but a small part of the amounts thus invoiced. According to the complaint those invoices amounted in total to $354,379.59 of which amount all but $12,937.28 had been paid. However, Edsil claims charges by Minder of $38,402.21 in excess of ceiling prices, leaving a balance due Edsil of $25,464.93.

As a complete defense to this action, the defendant Minder alleges that any meat or meat products sold by it to the plaintiff Edsil at prices in excess of those fixed by OPA regulations were unlawful transactions and that Edsil, being a party thereto, cannot recover any claims based thereon. The defendant Minder asserts that there has been a violation of subdivision (a) of section 4 of the Emergency Price Control Act of 1942 (U. S. Code, tit. 50, Appendix, § 904, subd. [a]) which reads in part as follows: " (a) It shall be unlawful, regardless of any contract, agreement, lease, or other obligation heretofore or hereafter entered into, for any person to sell or deliver any commodity, or in the course of trade or business to buy or receive any commodity * * * in violation of any * * * price schedule ". Relying upon the statute last quoted above the defendant Minder argues that, regardless of any such agreement respecting adjustments as alleged by appellant, the sales at over-ceiling prices as alleged are illegal and that the acts of the plaintiff Edsil in making any such purchases are unlawful and serve to defeat its present cause of action.

If, as is argued by the defendant Minder, it sold meat to the plaintiff Edsil at over-ceiling prices, such sales were illegal and plaintiff can maintain no action for a refund of the excess paid. (See, *Lightbody* v. *Russell*, 293 N. Y. 492; *Marrow Mfg. Corp.* v. *Eitinger*, 296 N. Y. 760.) However, it is alleged in the complaint that, by contract, the sale price of the meat to be delivered was *not to exceed ceiling prices*. The alleged contract covering the sales here involved specifically provided that the determination of prices to be paid was to be made according to OPA regulations. In the event such a determination had not been made

prior to the actual delivery of the products contracted for, the defendant Minder was to estimate the approximate ceiling prices. The charges thus invoiced and paid by plaintiff Edsil, which are the basis for the recovery sought, were not the final agreed contract prices. They were *temporary* charges until such time as the actual OPA ceiling prices could be determined. When the actual contract prices had been determined according to OPA regulations currently applicable, an adjustment was to be made and *excessive* temporary charges, if any, which had been paid by the seller, Minder, were to be refunded to the buyer, Edsil.

Thus the contract prices were to be determined and paid according to OPA ceiling prices. The money actually paid in the first instance was not intended as the sales price but, as we have seen, merely as a temporary payment subject to later adjustment when the ceiling price should be established.

That circumstance differentiates the present case from the *Marrow* cases (296 N. Y. 760, 296 N. Y. 762 and 296 N. Y. 764) where, in each case, the price agreed upon for the product sold and delivered was a final agreed price on which the buyer and seller dealt — the intention of the parties being that in each instance the sale involved had been consummated. In each of the cases last cited above, upon discovery that the prices exceeded those set by OPA — the buyer sued for a refund. In those circumstances it was held that, the goods having been purchased for use in trade or business, the Emergency Price Control Act provided no remedy for the plaintiff which was a purchaser paying an excessive price.

In the present case the plaintiff does not rely upon a statutory remedy for its right to a refund of excessive prices paid. It seeks to enforce the price agreed upon in a contract which allegedly was designed to comply with, rather than to violate current applicable OPA regulations.

The defendant Minder argues that since " for almost the entire period covered in the complaint " there were " specific dollar and cents ceiling prices " on the products sold, any contract such as is here involved, is manifestly illegal and had as its purpose to circumvent regulations prescribed by the OPA. In answer to that assertion the plaintiff claims that the ceiling price was not always a simple thing to determine even where the

regulation in question listed dollars and cents ceilings. Affidavits submitted by the plaintiff Edsil in opposition to defendant Minder's motion for summary judgment, state that "the variety and complexity of O.P.A. reports and the recent amendments made it difficult even for law enforcement officials of O.P.A. to know exactly what the prices were." Plaintiff Edsil also claims that the agreement was entered into at a time when price regulations were still in a formative stage and frequent amendments were made. In fact, it is said that these amendments were sometimes retroactive. This allegation is supported in part by the following testimony given by William Minder, Jr. — an officer in defendant corporation — when examined before trial: " Q. You also stated that if, after further investigation, you find that the prices charged were over your ceiling, a refund would be made. What did you mean by further investigation, by whom? A. Many *retroactive* regulations came out by O.P.A. and price changes had to be made retroactive." (Emphasis supplied.)

If, as the plaintiff Edsil contends, there were times when it was practically impossible — in view of *retroactive* amendments and serious questions as to classification of the meat — to determine the OPA ceiling prices at the time of actual delivery of the goods, we think the agreement which is the basis of this action was legal and appropriate in the circumstances and this action for the amount of temporary payments made by the plaintiff Edsil in excess of the agreed contract price was properly instituted.

If the contract here involved was entered into in good faith because of the difficulty of determining exact ceiling prices at the time of the delivery of the goods, it was valid and enforcible. However, if, as is claimed by the defendant, " dollar and cents " ceiling prices established by OPA made the determination of the correct charge readily ascertainable at the time of the sale, it may well be that there was no justification for such a contract. If such is the case, it may be found that the contract was not entered into in good faith but for the purpose of circumventing the rules and regulations of OPA and hence was invalid. As the record of proof upon this point presents conflicting claims, it

should not, in our view, be decided upon a motion for summary judgment.

In addition to denying the legal validity of such a contract as is here alleged, the defendant Minder also denies the *existence* of any such agreement. In that connection it appears that on several occasions during the period of these transactions credits were actually given by Minder to Edsil when it was shown that the original charges had exceeded OPA ceiling prices. It also appears that invoices from Minder carried the following stamped notation: " Prices quoted are to the best of our knowledge not over ceiling. If, after further investigation, we find the prices charged you [were] over our ceiling, a refund will be made."

Support is thus given to the plaintiff Edsil's claim that an agreement did exist such as is alleged in the complaint. In any event, as to the existence of the agreement, a question of fact was presented which should be determined upon a trial.

The second cause of action in the first case is for breach of warranty in connection with the same sales of meat. Relying upon the rule of *International Spangles Corp.* v. *Marrow Mfg. Corp.* (294 N. Y. 295) the Special Term Justice held that no action of any kind could be maintained upon a contract unless it was proven that the sale price was under the maximum OPA ceiling. Having ruled as to the first cause of action that the sales there alleged were illegal, Special Term dismissed the second cause of action. In view of our conclusion that a trial should be had to determine issues of fact tendered by the pleadings, it follows that the defendant's motion for summary judgment dismissing the second cause of action should be denied.

The judgments in the consolidated actions should be reversed: in *Edsil Trading Corp.* v. *John Minder & Sons, Inc.*, the motion by the defendant John Minder & Sons, Inc., for summary judgment dismissing the complaint should be denied; in *Faighes* v. *Edsil Trading Corp., and John Minder & Sons, Inc.*, the motion by the impleaded defendant John Minder & Sons, Inc., for summary judgment dismissing the cross complaint served by the defendant Edsil Trading Corp. should be denied, with one bill of costs in all courts.

DESMOND, J. (dissenting). In the *Marrow* cases (296 N. Y. 760, 296 N. Y. 762, 296 N. Y. 764) we held that the OPA statute

(Emergency Price Control Act of 1942, § 4 [U. S. Code, tit. 50, § 904]) meant what it said: that any sale of a covered commodity at over-ceiling price was "unlawful", and that a "trade purchaser" (not an ultimate consumer) who paid more than the ceiling price could not recover back the excess he had unlawfully paid. It is the fact of overpayment, regardless of agreement or intent or lack of intent, which makes such a vendee a participant in the unlawful transaction, and puts him, like his vendor, outside the protection of the courts (see *International Spangles Corp.* v. *Marrow Mfg. Corp.*, 294 N. Y. 295, 299, which cites *Carmine* v. *Murphy*, 285 N. Y. 413, 416, which in turn quotes, as to an illegal sale, "the general rule of law that no right of action can spring out of an illegal contract"). Lack of knowledge that the prices were over ceiling, or mistake or confusion in that regard, cannot help this plaintiff-purchaser any more than it absolved purchaser Marrow in the three cases first above cited. That plea might serve such a purchaser in a criminal prosecution where willfulness is expressly made an ingredient of the crime (*United States* v. *Bruno*, 329 U. S. 207) but our *Marrow* cases (*supra*) are plain holdings that ignorance or innocence as to the price schedules will not lift the iron curtain which the statute has set between the violating vendor, and the return of part of his money. If willfulness or no, were the test of plaintiff's rights, plaintiff Marrow's pleadings would not have been held insufficient, since Marrow specifically alleged that it had been deceived by fraudulent misrepresentations into believing that the prices it paid were under ceiling.

The excuse here offered by plaintiff is a mere variant of the one rejected by us in the *Marrow* cases (*supra*).

The judgment should be affirmed, with costs.

LOUGHRAN, Ch. J., CONWAY, THACHER, FULD and DYE, JJ., concur with LEWIS, J.; DESMOND, J., dissents in opinion.

Judgments reversed, etc.