MAGUIRE INDUSTRIES INCORPORATED, Appellant, *v.* EMERSON RADIO AND PHONOGRAPH CORPORATION, Respondent.

Supreme Court, Appellate Term, First Department, May 19, 1949.

*Robert L. London* and *Ira Schlusselberg* for appellant.

*David B. Williams* for respondent.

EDER, J. Plaintiff sued to recover a balance of $2,348.58 alleged to be due and owing to it for the sale and delivery of 22,367 transformers. This commodity was governed by price control regulation known as Maximum Price Regulation No. 136, section 9 (10 Federal Register 3197, 3200–3201), which, so far as here material, provides:

" If, for any such product, the manufacturer charges a price which is higher than the last price he charged a purchaser of the same class for the same product, he must file a report with the Machinery Branch, Office of Price Administration, Washington 25, D. C. This report shall be filed within ten days after entering into a contract at such increased price. The report shall contain the information required by Form OPA 694–2166.

" After receipt of the report, OPA may (1) approve the proposed maximum price, (2) disapprove the proposed maximum price, or (3) establish a different maximum price, determined under this section, by order. * * *

" The manufacturer may not receive payment for the product at the higher price reported by him until the OPA approves that price in writing * * *.

" (2) *Interim pricing*. Prior to receipt of approval of the OPA of any proposed price, or prior to the expiration of the thirty-day period after OPA's receipt of the required report (or of any verification of the facts stated in the report that may be requested), the proposed price may be tentatively quoted or charged, but no more than 75 per cent of the proposed price may be paid or received until a maximum price has been established."

The price quoted was $0.419 per unit, which was subject to approval of the Office of Price Administration. As noted *supra* the regulation authorized " Interim pricing ", it being therein provided that " the proposed price may be tentatively quoted or charged, but no more than 75 per cent of the proposed price may be paid or received until a maximum price has been established ".

The invoices forwarded by plaintiff to defendant contained the following notations: " In accordance with the Provisions of

Maximum Price Regulation No. 136, Section 9, we are invoicing you at 75% of the price upon which we are seeking OPA approval. As soon as said approval is received by us, we will bill you for the difference ''; or '' Billed at 75% subject to OPA price approval ''.

In accordance with the afore-mentioned regulation and within the ten-day period plaintiff filed a report with the Office of Price Administration wherein it sought permission to charge the agreed increased price of $0.419 each, for the transformers.

The Office of Price Administration wrote plaintiff requesting additional data and actual production experience before giving final approval. Plaintiff never obtained such approval.

In a letter written by plaintiff to defendant, dated April 23, 1947, plaintiff explained that due to numerous changes in personnel, a lack of adequate help, and also the necessity for devoting its energies to more pressing problems, the additional information asked for by the Office of Price Administration was never furnished to it.

Pending receipt of the additional data it required from plaintiff, and pending its final approval of plaintiff's application to charge the price of $0.419 per unit, the Office of Price Administration was abolished.

Defendant's position was, and is, that as plaintiff never obtained Office of Price Administration approval of the price of $0.419 per unit it was only entitled to charge $0.314 per unit and that the contract to sell the transformers at the price of $0.419 per unit was in excess of the maximum price regulation governing this commodity and was, and is, therefore illegal and unenforcible.

The said sum of $2,348.58 for which plaintiff sues represents the difference in the price of $0.314 per unit paid by defendant to plaintiff for said transformers and the price of $0.419 per unit which plaintiff is seeking to recover.

Defendant-respondent moved for summary judgment dismissing the complaint and plaintiff cross-moved for summary judgment in its favor. Defendant's motion was granted, and plaintiff's cross motion was denied. This appeal results.

Defendant relies on *International Spangles Corp.* v. *Marrow Mfg. Corp.* (294 N. Y. 295) and *Toll* v. *Friedman* (272 App. Div. 587) in support of its claim that the contract price of $0.419 per unit rendered the contract illegal and unenforcible. The court below referred only to the *Toll* case (*supra*).

These cases are regarded as inapplicable to the case at bar. They are authority for the proposition that where a contract

violates Office of Price Administration regulations, viz., where the sale is at an illegal price, there can be no recovery and that the termination of price control does not purge a contract of illegality where the original contract was entered into in violation of Office of Price Administration regulation. Such a contract is void *ab initio*.

In the instant case, however, such is not the situation, for here the regulation provided that a price other than the maximum price could be charged, subject to approval of the Office of Price Administration.

As prescribed by Maximum Price Regulation No. 136, pending Office of Price Administration processing of the applied-for price, plaintiff was permitted to collect from defendant 75% of that agreed price. The maximum or ceiling price was not $0.314 per unit as defendant contends, and as the court below found, but the maximum price was $0.419 per unit, subject only to processing by the Office of Price Administration.

It thus appears that the agreement for the sale and delivery of the transformers was legally entered into. Plaintiff acted and proceeded in conformity with the Maximum Price Regulation to sell transformers at $0.419 per unit, in filing the prescribed application and in invoicing the defendant therefor at that agreed price, so long as it collected from defendant only 75% of the $0.419 per unit charge, namely $0.314 per unit.

There is no substance, therefore, to defendant's contention that the agreement was, and is, invalid and unenforcible.

The Office of Price Administration having been abolished prior to any final action on plaintiff's application for approval of its charge of $0.419 per unit, thus rendering final processing or approval thereof by the Office of Price Administration impossible, it is defendant's contention, as I apprehend it, that even if the contract was not invalid, the only price plaintiff could legally charge is $0.314 per unit, and that it cannot profit by its failure to act expeditiously and obtain the final processing and approval of the increased price of $0.419 before the Office of Price Administration was abolished.

This situation in no way impaired plaintiff's right to recover the higher and agreed price charged.

The Office of Price Administration's regulation prescribed no fixed time for supplying the additional data it requested, and the fact that this agency was abolished before the requested data was furnished, does not result in the imposition of any penalty upon the plaintiff nor does it deprive plaintiff of its right to collect at the higher and agreed price charged.

The contract being valid when entered into, it is enforcible according to its terms. The situation would be different were the contract illegal when made.

Moreover, Office of Price Administration approval of the price of $0.419 became impossible when it ceased to exist, and compliance with that requirement was, therefore, excused (*Matter of Kramer & Uchitelle* [*Eddington Fabrics Corp.*], 288 N. Y. 467, 472).

In final analysis, in construing said Office of Price Administration regulation No. 136, it is my view that it merely postponed the collection of the additional 25% of the agreed price until approval of the increased price was obtained, and that when the Office of Price Administration ceased to exist the reason for postponing such collection, likewise ceased to exist.

As the contract was legal when made, and at all other times, as well, plaintiff could enforce all of its terms and was entitled to collect the full agreed price.

The determination of the court below granting defendant's motion for summary judgment and dismissing the complaint and denying plaintiff's cross motion for summary judgment, was, therefore, error.

Order granting defendant's motion for summary judgment, denying plaintiff's motion for summary judgment and dismissing the complaint and the judgment entered thereon, reversed, with $10 costs, and motion denied; and plaintiff's cross motion for summary judgment for the sum of $2,348.58 granted, with costs.

PECORA, J. (dissenting). In my opinion the learned court below made a proper determination of the motions for summary judgment, in granting defendant's motion and denying that of the plaintiff.

I do not, however, agree with the contention of defendant that the contract to sell the transformers to it at the unit price of $0.419 was illegal and unenforcible because such a price was in excess of the maximum price regulation. It is true that in *Toll* v. *Friedman* (272 App. Div. 587) it was held that the termination of price controls did not purge a contract of illegality where the original contract was entered into in violation of Office of Price Administration's price regulations. Here, however, Maximum Price Regulation No. 136 provided that a price higher than the maximum price could be charged, but that such higher price was thereafter subject to approval of the Office of Price Administration. The regulation declared (10 Federal Register 3200) that " The manufacturer [seller] may not receive payment for the product at the higher price

reported by him until the OPA approves that price in writing
* * *."

The plaintiff-appellant argues that since the obtaining of the Office of Price Administration approval of the higher price became impossible when that agency's existence was terminated, performance of that condition was excused. While impossibility of performance because of governmental action will ordinarily excuse nonperformance, it clearly appears in this case that it was plaintiff's own unreasonable and deliberate procrastination over a period of eleven months which was the proximate cause of the failure to obtain approval of the higher price by the Office of Price Administration rather than the termination of the Office of Price Administration on November 10, 1946.

The papers show that within the requisite period of ten days after receipt of defendant's purchase order, dated December 13, 1945, plaintiff filed a report with the Office of Price Administration pursuant to the latter's regulation, in which it sought permission to charge the higher price. The Office of Price Administration thereupon requested plaintiff to submit to it additional data and actual production experience before giving its approval, but plaintiff utterly failed to furnish such data. In its letter to defendant, dated April 23, 1947, plaintiff said: " Due to the numerous changes in personnel, the lack of adequate help and also the necessity of devoting our energies to more pressing problems, the additional information asked for by the O.P.A. was never furnished them * * *."

Thus it is manifest that plaintiff had a period of eleven months (December 13, 1945, to November 10, 1946) within which to furnish the Office of Price Administration with the additional information requested. It purposely omitted to do so for the wholly unsatisfactory reasons stated in its above-quoted letter. It was obviously plaintiff's inaction and not the Government's termination of Office of Price Administration that prevented compliance with the condition of the contract that approval of the higher price be obtained before payment thereof could be lawfully received by it. By plaintiff's conduct defendant lost the opportunity of a favorable ruling by the Office of Price Administration denying approval or fixing a lesser maximum price. Plaintiff, under the circumstances, should not be permitted to profit by its own deliberate laches.

The order appealed from should be affirmed.

HAMMER, J., concurs with EDER, J.; PECORA, J., dissents in opinion.

Order reversed, etc.