SOCONY–VACUUM OIL CO., Inc., v. ALLIED OIL CORPORATION.

No. 9896.

United States Court of Appeals.
Seventh Circuit.

Dec. 2, 1949.

W. S. Bodman, Chicago, Ill. and W. P. Gilbert, Chicago, Ill. (Wilson & McIlvaine, Chicago, Ill., of counsel), for appellant.

Thomas J. Downs, John D. O'Connor, David F. Dockman, Chicago, Ill. (Downs, Scheib & Osborne, Chicago, Ill., of counsel), for appellee.

Before KERNER, FINNEGAN, and SWAIM, Circuit Judges.

KERNER, Circuit Judge.

Plaintiff, a New York corporation, filed its amended complaint against defendant, an Illinois corporation, to recover actual cash damages which it claims it had to pay to the United States Government on account of defendant's false representations. Defendant moved that the complaint be dismissed because it did not state a claim upon which relief could be granted. The court sustained the motion, dismissed the complaint and entered a judgment for costs against plaintiff. From that judgment, this appeal is prosecuted.

Four grounds of recovery—in separate counts—are asserted in the complaint: (1) fraud and deceit; (2) unjust enrichment; (3) breach of warranty; and (4) equitable restitution. The complaint alleged among other things that plaintiff and defendant were engaged in the production, refining and marketing of petroleum products; that from April, 1943 to June, 1944, plaintiff bought from defendant several separate shipments of Diesel fuel which defendant shipped by rail in tank car lots from its refinery in Illinois to plaintiff at a point on the eastern seaboard; that during this period war-time regulations were in effect, which had been adopted in order to make it possible for petroleum distributors on the eastern seaboard to sell petroleum products shipped by rail from the middle west at a price equivalent to the price at which petroleum products shipped by tanker from the Texas Gulf coast could be sold. Under this regulation, purchasers of petrole-

um products from the middle western area became entitled to compensation for certain portions of the cost price of petroleum products at middle western points. The regulation, in substance, contained the further provision that the compensatory payments would not be allowed or made to the extent that an overceiling price was involved in any particular transaction. In other words, in order to maintain ceiling prices the United States Government paid such distributor a subsidy.

The complaint also alleged that the maximum price applicable to the shipments of fuel which plaintiff purchased from defendant could not be determined by plaintiff from any source whatever except from defendant. Plaintiff, therefore, at the time of making each and every purchase, demanded and received from defendant an unequivocal representation and guarantee in writing to the effect that each and every shipment was sold and billed at a price within the OPA regulation; that on the basis of such representations plaintiff paid defendant the prices charged for the fuel, and collected from the Government the compensatory adjustments with respect to each shipment.

The complaint further alleged that in April, 1947, a final audit was made of plaintiff's accounts by certified public accountants employed by the Government, and plaintiff then for the first time learned that the statements of defendant with respect to the applicable ceiling prices for the fuel sold to plaintiff were false; that defendant, by such false representations, had caused plaintiff to pay defendant prices which were in excess of authorized ceiling prices; and that on account of defendant's false representations plaintiff was compelled to and did pay to the Government $28,152, representing compensatory adjustment payments which plaintiff had received from the Government.

Defendant contends that the statute, Emergency Price Control Act of 1942, 50 U.S.C.A.Appendix, § 901 et seq., creating price control and the respective rights and liabilities of buyers and sellers thereunder, in the case of a purchaser who buys at an overceiling price, vests the right of recovery only in the Price Administrator. It asserts that under § 4(a) of the Act[1] the plaintiff was in duty bound to know the lawful price of the commodity, hence, the averments that defendant falsely represented that the prices charged for the oil were not in excess of established ceiling prices cannot aid plaintiff in stating its cause of action, and declares that § 205(e) of the Act[2] establishes an exclusive remedy for a violation of the Act in the Price Administrator. In support of its contention, defendant cites, among other cases, Porter v. Warner Holding Co., 328 U.S. 395, 66 S.Ct. 1086, 90 L.Ed. 1332; Armour & Co. v. Blindman, D.C., 73 F.Supp. 609; and Matheny v. Porter, 10 Cir., 158 F.2d 478.

On the other hand, one of plaintiff's contentions is that the gist of its action is the false representation upon which it relied and as a result of which it was compelled to pay the Government $28,000. It insists that where the maximum price of the commodity cannot be determined from

[1]. "It shall be unlawful regardless of any contract, * * * or other obligation heretofore or hereafter entered into, for any person to sell or deliver any commodity, or in the course of trade or business to buy or receive any commodity * * * in violation of any regulation or order * * * or of any price schedule * * * or to * * * agree to do any of the foregoing."

[2]. "If any person selling a commodity violates a regulation, order, or price schedule prescribing a maximum price * * * the person who buys such commodity for use or consumption other than in the course of trade or business may, within one year from the date of the occurrence of the violation * * * bring an action against the seller on account of the overcharge. * * * If any person selling a commodity violates a regulation, order, or price schedule prescribing a maximum price * * * and the buyer either fails to institute an action under this subsection within thirty days from the date of the occurrence of the violation or is not entitled for any reason to bring the action, the Administrator may institute such action on behalf of the United States within such one-year period. * * *"

any source except from the seller, and the purchaser contracts to pay the ceiling price, and pays, under the circumstances here appearing, a price in excess of the ceiling price as finally determined, the purchaser can recover from the seller, and cites Edsil Trading Corp. v. John Minder & Sons, 297 N.Y. 313, 79 N.E.2d 262, and declares it has pleaded a right of action cognizable under established principles of common law and equity, which principles existed long prior to the Price Control Act and which were not affected by that statute.

It is true that in the Warner Holding case, supra, the court, 328 U.S. at page 401, 66 S.Ct. at page 1091, 90 L.Ed. 1332 said: "It [§ 205(e)] establishes the sole means whereby individuals may assert their private right to damages and whereby the Administrator on behalf of the United States may seek damages in the nature of penalties." The case involved a question of excess rent, a right created by the statute. The plaintiff, the Price Administrator, sought an injunction and an order of restitution against a landlord, and the Court merely decided that the District Court had jurisdiction to order restitution. We do not think that what was said in that case is in any way controlling here.

Defendant places special reliance on the Blindman case, supra. In that case plaintiff sought to recover the overceiling amount of the prices paid to defendant. It is true that in that case, 73 F.Supp. at page 611, the court said: " * * * it seems clear that Congress intended to impose upon the purchasers in the course of trade or business the responsibility of policing their own industry, and therefore made it obligatory on both seller and purchaser * * * to know what the ceiling prices were in regard to the commodities with which they were dealing * * *. But whether innocent or not, the purchaser at an overceiling price in the course of trade or business was deemed a violator. And that Congress intended that such violator should not be accorded the right to bring any suit, but lodged that exclusive right in the Administrator seems free from doubt." In our view the facts are not comparable and the case is clear-

ly distinguishable. There was no claim that plaintiff had suffered any out-of-pocket damages. All that was claimed was that overceiling prices had been charged in spite of defendant's representation that the prices charged were within the ceiling. Moreover, as appears at page 612 of the opinion in 73 F.Supp., the Administrator had already been awarded a judgment against the defendant in an action brought under the statute on account of the overceiling sales.

The Matheny case, supra, is cited because the court in that case, 158 F.2d at page 479, said: "But here, section 205(e) creates a new liability, one unknown to the common law and not finding its source elsewhere. It creates the right of action and fixes the time within which a suit for the enforcement of the right must be commenced. It is a statute of creation * * *." In considering the language just quoted, it must be remembered that the statement was made in connection with an action, instituted by the Administrator under the statute, to recover damages for the sale of used automobiles at prices in excess of the ceiling price. It was not a suit by an injured party for fraud and deceit for which a right of action existed under established principles of law prior to the passage of the Price Control Act. We do not discuss the other cases cited by defendant for the reason that they hold no more than that where a purchaser sues the seller to recover an overceiling price, under circumstances requiring plaintiff to rely upon the statute, such plaintiff cannot escape the limitation of the statute by attempting to plead what is in fact a statutory cause of action.

■ In passing on a motion to dismiss because the complaint fails to state a cause of action, the facts set forth in the complaint are assumed to be true. That being so, in our case certain facts stand out so prominently they cannot escape observation. Those facts are that the maximum price applicable to the shipments of fuel which plaintiff purchased from defendant could not be determined by plaintiff from any source whatever except from defendant, hence, before plaintiff would buy and

at the time of making each purchase, plaintiff demanded and received from defendant a guarantee in writing that the selling price of the oil was the ceiling price or less. This representation was false, and defendant knew it. Plaintiff relied upon this representation, bought the oil at the price stated, and upon application to the Government received the compensatory adjustment, the amount of which adjustment had to be returned after an audit by the Government when plaintiff learned for the first time that the statements of defendant with respect to the applicable ceiling price for the fuel sold to plaintiff were false.

Plaintiff's suit was a common law action for fraud and deceit. It did not assert or rely upon the Price Control Act. It is admitted it was impossible for plaintiff to determine the ceiling price at the time of the purchase and delivery of the oil, and that therefore plaintiff, in good faith, demanded and received the guarantee in question. In such a situation, the contract is valid. It was designed to comply with, rather than to violate the Price Control Act. Cf. Edsil Trading Corp. v. John Minder & Sons, supra.

In an action for fraud and deceit for false representations, the complaint must show: (1) that the defendant made a representation in regard to a material fact; (2) that such representation was false; (3) that such representation was not actually believed by defendant, on reasonable grounds, to be true; (4) that it was made with intent that it should be acted upon; (5) that it was acted on by plaintiff to its damage; and (6) that in so acting on it the plaintiff was ignorant of its falsity and reasonably believed it to be true. Bouxsein v. First Nat. Bank of Granville, 292 Ill. 500, 501, 127 N.E. 133.

We conclude that the complaint should not have been dismissed for the reason that every element of a cause of action for fraud and deceit is alleged, and if proven upon a trial on the merits, will show an injury for which plaintiff should be made whole. In reaching this conclusion we have not overlooked defendant's contention that the action cannot be maintained because plaintiff is in pari delicto, There is no merit to this contention.

The judgment of the District Court is reversed, and the cause remanded for further proceedings not inconsistent with this opinion.

Reversed and remanded.